I'll begin this morning by thanking Judge Rakoff, who has been giving us his help this week from the Southern District of New York, and it's always great to sit with one of our colleagues, and particularly great to sit with him, and thank you for helping us with our caseload this week. You're very kind, thank you. Let me also call the calendar this morning, and if you could just please say you're present when the case is called. I see Cincinnati Insurance v. Harleyville Insurance Company. Counselor. And Ruoco v. Hemmerdinger Corporation. Good morning. And Clemens v. Colvin. And Belovich v. Stop and Shop. Ms. Belovich, you are present. I see you. So everyone is present, and we will, I think we're ready to proceed with the first case. Let's go ahead. Cincinnati Insurance v. Harleyville Insurance Company. Good morning, Your Honors. Steven Piper from the Law Firm of Hurwitz & Fine on behalf of Defendant Harleysville, Appellant Harleysville. Your Honor, in reviewing for this argument this morning, I counted there's 671 pages on the record before Your Honors. And this case boils down to four of those 671 pages. And frankly, it boils down even further than that. It really boils down to about 75 words in those 671 pages. This is an insurance coverage dispute. It really revolves around whether or not two entities, particularly the University of Rochester and LeChase Corporation, qualify as an additional insured under a policy issued by my client, Harleysville. To do so, they must qualify under an endorsement on the policy. There are two endorsements, as the Court surely is well aware. First, I want to be clear. Do you concede that 2033 does not cover, that it is a matter entirely of 2010? That's been our position, correct, Your Honor. Yes. Yes, so that you concede that that is not, that the district court, insofar as it went on 2033, erred. That's our contention, Your Honor, as well. Yes. Yes. This case, I think you'll hear from my opponents, certainly, both of us would agree that this case comes down to the CG2010 endorsement. And therein, the endorsement, which is found at page 83 of the record, doesn't contain any information about an insured under the policy, but it instructs the reader of the policy to refer back to the declaration pages. So we can distill this down even further. It really comes down to those 75 words or so on pages 22 and 23 of the record. Therein, there is a schedule of other coverages and endorsements at the bottom of page 22 of the record. It identifies three specific coverage grants that are in addition to the main coverage grant by the policy. So there's the typical grant, and then three additions. The first being employee benefits liability coverage. The second being the additional insured owners, lessees, contractors, scheduled person, or organization coverage. That's colloquially referred to as the CG2010 form. And then the final form is the 2033, which your Honor has already, I think, indicated. We maintain doesn't apply in this case. So, therefore, it's a very, very simple question. It's not really a question of law here. It's simply a question of interpretation of what these 75 words mean. It is my client's contention that in order to qualify as an insured under CG2010, they needed to have been added, they being University of Rochester and LaChase, needed to have been specifically added to the schedule. They are not. University of Rochester, LaChase do not qualify and, in fact, do not even show up in this policy of insurance. And, as such, we maintain they- Do you agree that the Kimmel Moral Subcontract requires Kimmel to name the hospital as an additional insured on the policy? I would agree that the Kimmel Moral Subcontract created an obligation- Setting aside whether the insurance policy, I understand that's a different- Yes. My reading of the policy, I would agree with the Court if the contention is that University of Rochester qualify or that Kimmel had an obligation to obtain coverage for the University of Rochester. Yes. But the hospital, you say, is different from the University of Rochester. No, no, the University of Rochester is the hospital. It's University of Rochester slash Strong Memorial Hospital. It's the same entity. Yeah, okay, okay. Yeah, it's the same entity. It's a joint collaboration of the university and the hospital. But that is not the same as the name that is there about the Institute of Technology. Correct. There are- My opponent could speak probably better to the institutions of higher learning in Rochester, but there are two. University of Rochester is a school that is separate and distinct from the Rochester Institute of Technology. They're not at all related in this case. What this schedule shows, Your Honor, is exactly that, though. Rochester Institute of Technology, or it's colloquially referred to upstate as RIT, is, in fact, insured. RIT is just not a part of this case. For University of Rochester to have qualified, they would have had to have been added. And the declaration's part of the endorsement. That's exactly correct. My opponent will argue that the second section, or the third reference to an addition here, again, colloquially the 20-30-30-33 endorsement creates coverage. We maintain that it doesn't. And I think- What does it do if it doesn't? What is it doing there? It's simply outlining there are three grants of coverage. There's the employee benefits grant of coverage, which is the endorsement CG-71-96. There's the CG-2010. And then there's the CG-33. And under each of them, it provides additional information that may be useful. For instance, the 20-33 endorsement, to answer Your Honor's question, it provides exactly what the standard is. If you enter into a contract, you being the named insured Kimmel, enter into a contract with such person, i.e. privity, then you would qualify under that endorsement. Obviously, there's no privity here. That issue has, I think, been resolved and conceded by all parties. So it really becomes 2010. Right. And with that, Your Honors, if there are no further questions for me, I will cede the remainder of my time and, if possible, keep two minutes for rebuttal. Thank you very much. Good morning, Your Honors. Laurie Vahey on behalf of the Apelli Cincinnati Insurance Company. And I'm anticipating that you'll have a lot of questions. And I think one thing I would like to address is Your Honor's question about whether there's an issue of the 20-33 and whether both sides concede. So I'm going to jump right into that, Your Honor. I asked him, but I was going to ask you the same thing. I knew it was coming. So 20-33. While it's not the primary argument of Cincinnati Insurance, at page 21 of our brief, we did say, to the extent the lower court relied on 20-33, we think it was correct. And this is why. So in the case law presented by Harleysville Insurance, they focus on cases that say, you have to have privy just between the two contracting parties in order for there to be coverage as an additional insured. If you have language that says, with whom? With. With is the key word that those courts relied upon. And here, it's different. The 20-33 endorsement says, for whom you are operating, for whom you are doing work. And then it goes on. So to the extent that the lower court relied on that, we think it was proper. So you are not conceding what the other side said that you conceded, that the district court erred with respect to the hospital because there wasn't direct privity with him? Correct, Your Honor. It just wasn't our primary argument. So our primary argument really is under the 20-10. And I think Your Honor hit it nail right on the head. What is it doing there when we're talking about the schedule? So if we take just the 20-10, put the 20-33 to the side. Because what endorsements do, as Your Honors know, is they expand coverage, not limit it. So taking the 20-33, as Harleyville would like you to do with that 20-10, they want you to limit the coverage provided by 20-10. And that's not what endorsements do. Where does 20-10 allow your clients to be included? The only thing is the title. Is there anything other than a title that suggests any coverage by yours unless you're in a schedule or something? And you're not in the schedule. And you're not below the schedule. You're nowhere except maybe the title may cover you. Well, we may differ on that, Your Honor, because we are in the schedule. And this is why we are in the schedule. When you look at 20-10 and it refers you to the schedule, I think we all agree it's blank when you look at the endorsements. The schedule is blank. That's why I assumed you weren't in it. Right. So you have to go to the declarations. I'm sorry. Maybe I misunderstood your question. So you go to the declarations. So when you go to the declarations, which Your Honors have in front of you at A-32 and A-33, what you look at the schedules. So it says it gives meaning. So 20-10 gives meaning to what's in the declaration schedule. So when you give meaning to the words in the declaration schedule, it doesn't matter if those words mirror the name of another endorsement. Those words are given meaning. So when you look at that schedule, Your Honor, what did that schedule say? It gives an address, but also gives a blanket coverage, which New York courts have clearly recognized as proper. Tell me exactly how it does it, how the blank schedule saying look to the declaration. Then what is in the declaration that causes you to say that there's anything there? Thank you. At A-83, this schedule says, when it's blank, information required to complete this schedule, if not shown above, will be shown in the declarations, as Your Honor knows. And then it says, underneath that, section two, who is insured, is amended to include as an additional insured the person or organization shown in the schedule. So that takes us back to the schedule in the declarations. In the schedule? Yes, in the schedule in the declarations, if we look at the schedule, which is before Your Honors, Excuse me. It says, not only the Rochester Institute of Technology, but it also provided, when you look under schedule of other coverages and endorsements, on the second page of that declaration is under schedules and endorsements. Additional insured, it says it twice. Additional insured, owners, lessees, or contractors, automatic status when required in construction agreement with you. It doesn't matter. That was given meaning by referral in the 2010, back to those words. But why shouldn't that be interpreted exactly the same way 2033 does? I mean, this is all part of one insurance thing. Why should this be different from what the requirement of 2033, which I thought you had conceded required privity, you haven't, so you haven't, so then the question comes back to that. Because the words within the schedule say automatic status when required in construction agreement with you. It does not require privity. So what happened, when we look at the agreement between the parties, we would argue Can you imagine this on page A33 that you're referring us to? I'm sorry, what's that? The words that are on page A33, the additional insured language there. Yes, Your Honor. But my colleague's question is why would that vary? Why have the endorsement and then contradict it in this portion of the agreement? Actually, we would contend it's not contradicting itself. What it's doing is expanding coverage. So the party's underlying agreement said you need to use the 2010. Isn't this a most remarkable way of including somebody? I mean, you know, you could perfectly well have had it in the schedule. You could perfectly well have listed it there. But you're asking us to go all the way around to this, which may or may not have meaning, and then say that it isn't limited but what is there. You know, even to find an ambiguity, which is not relevant here, because in New York contra profferendum doesn't apply when there are two insurance companies, so we don't have that. But I'm trying very hard even to find an ambiguity here. I would challenge, Your Honors, to listen to just a few words with regards to this. So this title, Harleysville chose to use these words. It's Harleysville who drafted this contract, chose to use these words as a description of the type of coverage that it would provide. In order to get to the interpretation that Harleysville is suggesting and which your question is asking about, you're reading in the other endorsement, the language requiring privity, into that language. So what you're doing respectfully, Your Honor, is you're taking the 2033 language, which is talking about privity, you're taking that and you're putting that into the schedule. That's not what the schedule requires. The list of forms and endorsements, the 2010 and the 2033, are listed below. There's no other reason to have it in the schedule other than the fact that Harleysville gave it meaning within the 2010. The 2010 said, go to the declarations, you as the insured. So we would argue it is an ambiguity. We think it's clear, but at worst, it's an ambiguity. And if you are the insured in this instance, and your contract said you have to insure not only, Kimmel had to insure the owner, and there's others we contend, LaChase, but the owner, and used the 2010 that was specifically referred to in its contract. I come back to why, if that is what you thought was the case, they wouldn't just list them in the schedule. They did, after all, list the Institute of Technology there. Why wouldn't they list your clients there if that's what you thought? I mean, isn't that the normal thing? I don't think so. That's what human beings would do, and one can expect insurance companies to do even more than human beings, can't one? That's a doubtful problem. That's a dangerous statement, yes. Cincinnati Insurance would do that. But with respect to here, Your Honor, I'd point you to the Hilton and the HRH decisions in this matter because I think we find as an industry standard with regards to these, because these businesses are dealing with so many entities that they have these blanket descriptions. It's highly typical, almost, I would argue, the normal course of business to have these kind of contracts with what I would call blanket description as required by contract. This is just another form of doing that. So why would they buy this endorsement? Why would they pay extra for this endorsement if it wasn't allowing more coverage than allowed in the 2010? They thought they were buying more coverage because endorsements expand coverage. And so here, they had these contractual requirements to provide it for the owner. Everybody agrees, the owner, the university, the medical center needed to be covered. The reasonable insured in looking at this, if there's ambiguity, would certainly believe that this was providing coverage. Not reading in the 2033 into that schedule, that's improper. It's looking at the schedule itself on its own, giving the words meaning that are there with respect to that. I only have 30 seconds, so I'm going to be really brief. With regards to LeChase, we respectfully disagree with the court below with regards to that. There's a specific incorporation clause, not a general incorporation clause of the overall contract. We'd rely on our brief with regard to those arguments. Thank you for the opportunity to address you this morning. I'm glad that you're as interested as we are in this matter. Thank you. Thank you. Very briefly, your honors. I wanted to certainly apologize to the extent I missed something in Cincinnati's brief. It was my understanding that the 2033 had been conceded. Obviously it wasn't, and to the extent I wasn't accurate when I was up here earlier, I apologize to the court and to my opponent. Certainly it wasn't my intent. With respect- There was nothing in their briefs to suggest otherwise, so that what you said one might have read. In any event, out of deference to my colleague, I wanted to make sure that that was clear on the record. And also thank the court for their interest in this. Again, I'll simply hit what the schedule says. It identifies three grants of coverage in addition to the main coverage grant. My opponent never mentioned the Employees Benefits Liability Coverage. And if that wasn't intended to distinguish, these are three different endorsements which grant additional status, then it wouldn't be there. It obviously is there, we're setting it out. These are the three, and these are the requirements they're under. The requirement that she speaks to goes to the 2033, which I think we all agree, maybe we don't all agree. I said it to myself again, we don't all agree. But certainly the New York courts have ruled on over and over again, which 2033 requires privity. And the endorsement and the language they're looking at goes to the 2033, which requires privity. On that, you would contend that New York law is clear that when there is this kind of language, there has to be privity, it cannot be simply a contract with an agreement with someone else to be covered. Absolutely, your honor. Linarello versus the city of New York from 2004 all the way through the Gilbane decision from 2016. Courts in New York have with, I won't say unanimity, but certainly near unanimity, it may actually be unanimity, have applied the privity standard to that language in the 2033. Thank you. My, just one question. Your client did write the policy, but contra proferendum does not apply in New York because it is between two insurance companies. I would agree with that, Judge. Thank you. Okay. Thank you both. Very, very well argued. Yes.